```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
DISCOVER FINANCIAL SERVICES, INC.,

                              Plaintiff,
                                              04 Civ. 7844 (BSJ)(DFE)
         - against -
                                              MEMORANDUM AND ORDER
VISA U.S.A., INC., VISA INTERNATIONAL
SERVICE ASSOCIATION, MASTERCARD               This is an ECF case.
INCORPORATED, MASTERCARD INTERNATIONAL
INCORPORATED,

                              Defendants.
------------------------------------------x
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

                              Plaintiff,
                                              04 Civ. 8967 (BSJ)(DFE)
         - against -
                                              MEMORANDUM AND ORDER
VISA U.S.A., INC., et al.,
                                              This is an ECF case.
                              Defendants.
------------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    I am responding to the joint letter dated August 2, 2006 from all the parties in 04 Civ. 8967. Pursuant to my normal practice, I plan to keep the joint letter and its exhibits in my chambers file, and I do not plan to have it docketed.

    Years ago, the Department of Justice's Antitrust Division (the "DOJ") commenced an investigation of the Network Defendants and the Bank Defendants. They retained separate law firms, which apparently entered into joint-defense agreements for the duration of the investigation. After investigation, the DOJ decided to sue to enjoin the Exclusionary Rules. However, the DOJ decided to sue only the Network Defendants. Hence the Bank Defendants were not defendants in the *DOJ Case*, but I assume (for my present purpose) that they anticipated that, if the DOJ won the *DOJ Case*, then American Express would bring a follow-on lawsuit and might sue them. The potential damages were so enormous that American Express might find it insufficient to sue only the Network Defendants.

    As it turned out, the DOJ won the *DOJ Case*, and American Express has now sued both the Network Defendants and the Bank Defendants. American Express has announced that it will seek

-1-

offensive collateral estoppel against the Network Defendants and also against the Bank Defendants. The Second Circuit has written:

> ... Because of ... due process concerns, we have generally held that a determination in a prior judicial proceeding collaterally estops a claim by a nonparty only if that nonparty [1] was represented by a party to the prior proceeding, or [2] exercised some degree of actual control over the presentation on behalf of a party to that proceeding.

*Stichting etc. v. Schreiber*, 327 F.3d 173, 184-85 (2d Cir. 2003). I have inserted the numbers 1 and 2 in brackets to highlight the two alternate grounds for proving privity.

American Express has the burden to prove either of those two grounds; it asserts that it will be able to prove both of them. The Bank Defendants assert that American Express will fail to prove either ground.

The first ground contains two aspects:

> (a) That the nonparty was "in substance the one whose interests were at stake in the prior litigation." *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977).

> (b) That the nonparty's interests "were represented in the prior proceeding by another vested with the authority of representation." *Stichting*, 327 F.3d at 185 (internal brackets and quotation marks omitted).

American Express says that "the necessary alignment of interests" has already "been determined by the holdings of Judge Jones and the Court of Appeals." (Joint Letter, p. 2.) At pages 2-3, it points to her factual findings:

> ... For example, as Judge Jones found in the *DOJ Case*, the Exclusionary Rules defended in court by Visa and MasterCard were **"restrictions of, by and for the member banks," and were intended to protect the profits of the member banks.** *DOJ Case*, 163 F.Supp.2d at 400, 405 (emphasis added).

American Express is using circular logic if it is suggesting that it can prove the first possible ground for collateral estoppel privity by merely citing Judge Jones's factual findings

-2-

from the prior litigation. As to the first ground, the Bank Defendants are entitled to present her with whatever evidence may be available to thwart American Express's allegations of alignment of interests plus vesting of authority. After that, we will see whether Judge Jones makes those same findings quoted by American Express in bold print. If she does, and if she also finds that Visa and MasterCard were vested (explicitly or implicitly) with authority to represent the banks' interests, then she would presumably find that American Express has proven the privity element of collateral estoppel. On the other hand, she may find that American Express has failed to prove the first possible ground (alignment of interests plus vesting of authority). Therefore, American Express is attempting to gather evidence to prove the second possible ground (that, during the trial of the *DOJ Case*, the Bank Defendants "exercised some degree of actual control over the presentation" by Visa and MasterCard).

In connection with the second ground (and perhaps also the first ground) American Express asks me to rule that it is entitled to obtain "all discovery relating to the privity issue," including documents and information covered by the attorney-client privilege and the work-product doctrine. (Joint Letter, p. 12.) The Defendants object; they write:

> The Banks and the Networks are producing documents reflecting Bank-Network communications while the *DOJ Case* was pending; they are also identifying the parties to such communications in response to interrogatories; and Amex is free to question witnesses about such communications in depositions. Such discovery will provide Amex with ample opportunity to test the truth of its theory that the Banks "controlled" the Networks' defense of the *DOJ Case*.

(Joint Letter, p. 17.) The Defendants also write:

> The Banks, of course, will assert privileges with respect to the internal communications between the Banks and their own counsel, and the Networks will claim privilege for communications between their counsel and their own officials, including their directors when acting in that capacity. Because they were then each recipients of DOJ investigative demands, the Banks and the Networks also reserve the right to claim privileges with respect to communications between and among them during the investigative stage before the DOJ complaint was filed ....

(Joint Letter, p. 17, n. 6.)

American Express invokes the doctrine of "at issue" waiver, perhaps more aptly described as "at issue" forfeiture. American Express argues that fairness requires that the Bank Defendants forfeit one of two rights:

>   (a) The Banks must forfeit their right to continue to deny American Express's allegations that the Banks vested Visa or MasterCard with authority to represent their interests in the *DOJ Case*, and that the Banks helped to formulate the defense strategy in the *DOJ Case*, and that the Banks exercised some degree of actual control over the presentation made by Visa or MasterCard in the *DOJ Case*.
>
>   (b) Alternatively, the Banks must forfeit their right to invoke any privileges with respect to information that is relevant to those denials.

At page 5 of the joint letter, American Express discusses *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), and writes:

>   ... Importantly, the Second Circuit did not require actual use of the privileged communication in order to find an implied waiver. Rather, the finding of implied waiver was based on the fact that the defendant had made an assertion that "in fairness require[d] examination of protected communications."

The crucial threshold question is: what sort of "assertion" is the kind that, upon examination, might lead to forfeiture of attorney-client privilege and attorney work-product protection? In my review of the caselaw, I find that the "assertion" generally concerns an element as to which the asserter has the burden of proof.

In *Bilzerian*, the defendant proposed to testify that he had "made a good faith attempt to comply with the securities laws" by taking steps "to change the structure of his financing arrangements ... in order to enable himself to be able to report as personal funds on the 13D the funds that he received from the trust ...." 926 F.2d at 1291, 1294. The Second Circuit ruled that this was crucially different from a "defendant's assertion of lack of intent." It acknowledged the force of *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989), an opinion written by then Circuit Judge Ruth Bader Ginsburg, which the Second Circuit explained as follows:

>   ... In that case attorney-client

-4-

> communications were admitted at trial
> over defense counsel's objection, in part
> because [White's] assertion of lack of intent
> was deemed to have waived the privilege.
> In reversing White's conviction the court
> stated: "[a] rule thus forfeiting the privilege
> upon denial of *mens rea* would deter individuals
> from consulting with their lawyers to ascertain
> the legality of contemplated actions ...."
> 887 F.2d at 270.  Because intent in an element
> of the case that the government must prove, the
> court continued, waiver of the attorney-client
> privilege based on denial of intent "would cut
> short both the privilege and the right [to
> put the government to its proof]."  *Id.*

*Bilzerian*, 926 F.2d at 1293.

    *White* and *Bilzerian* were criminal cases.  However, the relevant civil cases generally draw a similar distinction between (a) a litigant who denies an element that his adversary must prove, and (b) a litigant who makes an assertion that he undertakes to prove.  I shall now discuss five civil precedents that found an "at issue" waiver.

    The seminal case, *Hearn v. Rhay*, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975), was a prisoner's civil rights action.  The prison officials asserted the affirmative defense of qualified immunity, which required both objective and subjective good-faith belief that their conduct did not violate "settled, indisputable law." *Wood v. Strickland*, 420 U.S. 308, 321, 95 S.Ct. 992, 1000 (1975).

    *Pereira v. United Jersey Bank*, 1997 WL 773716 (S.D.N.Y. Dec. 11, 1997), dealt with the affirmative defense of setoff.  The defendant bank had exercised certain setoffs in which its in-house counsel had played a critical role when he arguably knew about a customer's check-kiting scheme.  Judge Preska ruled that "the factual assertions surrounding the setoff defense can only be fully assessed by examining UJB's otherwise privileged communications with counsel."  *Id.* at *6.  However, she was careful to note at *4:

> ... [T]o the extent that *Hearn* ... stands
> for the proposition that the mere act of placing
> a party's state of mind at issue supports a
> finding of waiver, the law in this circuit
> does not support such a result.

    In the context of collateral estoppel, we have *Weizmann Institute of Science v. Neschis*, 2004 WL 540480 (S.D.N.Y. Mar.

17, 2004). In that lawsuit, the defendants invoked defensive collateral estoppel on the basis of an arbitration decision in their favor. It was undisputed that the plaintiffs had participated in that arbitration. However, the plaintiffs made an assertion on which they clearly had the burden of proof: they argued that they "essentially had no choice but to join the arbitration ... because [one of them] was advised by Liechtenstein counsel that if it did not [join], it might be precluded from contesting the validity of the Anturia by-laws in any Liechtenstein tribunal." The plaintiffs later narrowed their argument to an assertion that they were "*in fact* compelled to take part in the Liechenstein arbitration by defendants' machinations and the operation of Liechenstein law." *Id*. at *2 (emphasis in plaintiffs' argument). At *5-6, Magistrate Judge Katz wrote:

> ... To some degree, Plaintiffs have explicitly invoked their attorneys' advice on that subject. ... However, the Court does not rest its decision simply on an express waiver of privilege, since there has also been an implied waiver of the attorney-client privilege.
> 
> \*   \*   \*
> 
> In invoking "compulsion" as a defense to collateral estoppel, Plaintiffs have made "factual assertions the truth of which can only be assessed by examination of ... privileged communication[s]." *In re Kidder Peabody*, 168 F.R.D. at 470. Put another way, Plaintiffs' understanding of the legal alternatives to the arbitration, or of the need to participate in the arbitration, clearly implicates privileged communications.

*In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996), was an opinion by Magistrate Judge Dolinger. Kidder shareholders alleged that both Kidder and its former employee Joseph Jett committed a massive fraud that recorded enormous phantom profits and overstated Kidder's earnings. Kidder did not merely deny that it had connived in the fraud. Its outside attorney Gary Lynch conducted an intensive fact-finding investigation and prepared a detailed report. Kidder's briefs "referred specifically to the Lynch report as the authoritative source of information as to the underlying facts, and argued, in part, that dismissal [of the complaint] was appropriate because the report demonstrated that Jett had engaged in elaborate efforts to hide his scheme from Kidder and that Kidder was guilty of nothing more than simple negligence and had engaged in no deliberate misbehavior." 168 F.R.D. at 471. In a narrow technical sense, the shareholders still had the burden to prove

that Kidder had connived in fraud. In a practical view, however, Kidder was undertaking to prove detailed factual assertions that were analogous to an affirmative defense, and analogous to Bilzerian's proposed testimony.

Finally, there is a recent decision by a different Lynch (Judge Lynch) in *Century 21, Inc. v. Diamond State Ins. Co.*, 2006 WL 2355323, at *2-3 (S.D.N.Y. Aug. 10, 2006):

> ... The time that an insured became aware of liability-triggering facts is central to determining the notice question,
> ....
>
> Seeking the benefit of its insurance contract, plaintiff Century has put its knowledge in issue by affirmatively claiming that it fulfilled its own duty of providing due notice. As Diamond notes, under New York law, untimely notice is not an affirmative defense that [the insurer] must raise; rather, timely notice is a condition precedent that the insured must plead and prove in order to demonstrate coverage.

On that basis, Judge Lynch concluded that Century had waived privilege as to its discussion of liability-triggering facts. He cautioned: "Exceptions to the attorney-client privilege should be construed narrowly, however, in order not to swallow the rule." *Id.* at *3. The "at issue" exception has a threshold requirement, and it should not be construed too broadly: it requires that the privilege holder "*placed* the privileged information in issue via its *affirmative* act." *Id.* at *2 (emphasis added).

In the joint letter to me, at page 15, the Bank Defendants write:

> Amex fails to meet the first prong of the test because Amex, not the Banks, is the party that has put privity at issue. Privity is not an affirmative defense that was injected into the case by the Banks; it is an essential element of *Amex's* attempt to obtain offensive collateral estoppel against the Banks.
>
> ... [W]hen Amex wrote to Judge Jones urging her to apply collateral estoppel against the Banks even though they were not parties to the *DOJ Case*, the Banks pointed out in response that Amex bears the burden of proving that they were in privity with Visa and MasterCard, .... Denying a necessary element of an opponent's argument - - which is all the Banks

-7-

>have done here - - falls far short of the type of
>conduct that waives the attorney-client privilege.
>*See Bovis Lend Lease, LMB, Inc. v. Seasons
>Contracting Corp.* 2002 WL 31729693, at *[17]
>(S.D.N.Y. 2002) ("Generally, where a party does
>not itself place in issue the matter as to which
>the privileged communications are relevant, the
>privilege is not waived."); *Oxyn Telecomms., Inc.
>v. Onse Telecom*, 2003 WL 660848, at *[6] (S.D.N.Y.
>2003) ("A party cannot through its own allegations
>... waive its adversary's privilege") ....

In response, American Express appears to say that it was slow to realize that it could assert an alternative ground for privity - - namely, an allegation that the Bank Defendants played a role in the defense of the *DOJ Case*, and exercised some degree of actual control over the defense presentation. American Express gives me the following account of the letters submitted to Judge Jones simultaneously in 2005:

>... American Express argued that privity
>can be established on the basis of the alignment
>of interests between the Bank Defendants and the
>Associations - - never claiming that the role of
>the Bank Defendants in the defense of the DOJ Case
>was relevant - - let alone that the Bank Defendants
>played any particular role. (*See* Ex. A, Letter
>from Donald L. Flexner to Judge Jones dated
>March 1, 2005 at 2-3). It is the Bank Defendants
>who first argued that their participation [vel non]
>in the defense of the DOJ Case was relevant,
>affirmatively asserting purported facts to show
>that the Bank Defendants did not exercise "some
>degree of actual control" over that defense.
>(*See* Ex. B, Letter from Richard G. Parker to
>Judge Jones dated March 1, 2005 at 2). Accordingly,
>it is not American Express's pleadings, but rather
>the Bank Defendants' own factual assertions that
>have put their roles in the defense of the *DOJ Case*
>at issue. ...

(Joint Letter, p. 7.)

It may be that American Express's initial "pleading" to Judge Jones claimed only the first ground for privity (alignment of interests plus vesting of authority). But it is now pleading, in addition, the alternative ground (exercise of some degree of actual control over the defense presentation). In the simultaneous submissions to Judge Jones on March 1, 2005, the Bank Defendants anticipated that American Express's invocation of offensive collateral estoppel would lead it to claim both of the

-8-

alternative grounds.  They read the case law, saw the essential elements that American Express would have to prove, picked out certain of those essential elements, and denied them.  At page 6 of the joint letter to me, American Express strains to characterize those denials as affirmative assertions:

> ... The Bank Defendants asserted that they did not "exercise[] control over either Visa or MasterCard in the prior litigation," that they did not "formulate[], mastermind[] or direct[] the defense of either entity," and that they did not "vest[] either Visa or MasterCard with the authority to represent [them] individually in the *Visa* litigation."  (*See* Ex. B, Letter from Richard G. Parker to Judge Jones dated March 1, 2005 at 2).  The Defendants have asserted that each of these purported facts is true, ....

These negative assertions are normally called denials.  In any event, the quoted phrases (such as "exercise[] control") were not injected or made relevant by the Bank Defendants.  Instead, they were prominent phrases in the pre-existing caselaw on the essential elements of collateral estoppel.  They became relevant because American Express invoked collateral estoppel.

"To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations.  The holder must inject a new factual or legal issue into the case."  *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).

For the reasons stated above, the Bank Defendants have not made any "assertion" that has effected a forfeiture or waiver of attorney-client privilege or work-product protection.  However, to the extent that any party asserts its privilege concerning the advice it received from counsel, it will be precluded from introducing evidence concerning that advice.  *Oxyn*, 2003 WL 660848 at *8.  No party "may withhold relevant *facts* from production simply because they were either communicated to, or learned from, its attorneys. ... Similarly, the privilege does not protect facts that an attorney obtains from independent sources and then conveys to his client."  *Id.* at *9 (emphasis in the original).

_____
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007